# EXHIBIT 4

```
              UNITED STATES OF AMERICA
        IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF NEW YORK
```

AMERICAN HOME ASSURANCE COMPANY,
a/s/o GENTEX CORPORATION,

        Plaintiff,

                              ECF CASE

vs.

                              07 Civ. 7930 (CBD)

CENTRAL TRANSPORT INTERNATIONAL,
INC.,

        Defendant.
_____/

### DEPOSITION OF JEFFREY CACKOWSKI

The deposition of JEFFREY CACKOWSKI, taken before me, PENNY E. SIDICK, Notary Public in and for the County of Oakland, acting in Macomb County, at the Holiday Inn Express, 11500 Eleven Mile Road, Warren, Michigan 48089, on Thursday, June 5, 2008, at or about 1:20 p.m.

APPEARANCES:

For the Plaintiff:        JAMES J. RUDDY, ESQ. (JR-6693)
                              McDermott & Radzik, LLP
                              Wall Street Plaza
                              88 Pine Street, 21st Floor
                              New York, New York 10005
                              Telephone: (212) 376-6400

For the Defendant:        CHARLES L. HOWARD, ESQ.
                              Keenan, Cohen & Howard, P.C.
                              One Pitcairn Place, Suite 2400
                              165 Township Line Road
                              Jenkintown, Pennsylvania 19046
                              Telephone: (215) 609-1110

# TABLE OF CONTENTS

WITNESS                                                    PAGE

JEFFREY CACKOWSKI

    Direct Examination by Mr. Ruddy

# EXHIBITS

|  | Marked | Admitted |
|---|---|---|
| Plaintiff's Exhibit No. 1 | 10 | |
| Plaintiff's Exhibit No. 2 | 11 | |
| Plaintiff's Exhibit No. 3 | 16 | |
| Plaintiff's Exhibit No. 4 | 20 | |
| Plaintiff's Exhibit No. 5 | 60 | |
| Plaintiff's Exhibit No. 6 | 97 | |

```
 1                    Warren, Michigan
 2                    Thursday, June 5, 2008
 3                    At or about 1:20 p.m.
 4                           -  -  -
 5                    COURT REPORTER: Do you swear under penalty of
 6         perjury to tell the truth, the whole truth, and nothing
 7         but the truth, so help you God?
 8                    THE WITNESS: I do.
 9                J E F F R E Y    C A C K O W S K I ,
10              called as a witness, testified as follows:
11                    MR. HOWARD: We would like to read and sign.
12                    MR. RUDDY: Sure, please.
13                    MR. HOWARD: Stipulations.
14                    MR. RUDDY: The usual stipulations. All
15         objections reserved for trial, except as to the form of
16         the question.
17                    MR. HOWARD: That's fine.
18                    MR. RUDDY: Okay.
19                    Mr. Cackowski, my name is James Ruddy. I
20         represent the Plaintiff in this action. I'm going to be
21         asking you a number of questions, and you have to answer
22         verbally. You can't shake your head because, as you
23         see, everything is being recorded.
24                    If you don't understand the question, ask me
25         to rephrase it. If you don't hear the question, the
```

```
 1              court reporter will be delighted to repeat it for you.
 2                      As I said, you have to answer each question
 3              verbally, absent an objection by your counsel.
 4                      Okay.
 5                              DIRECT EXAMINATION
 6       BY MR. RUDDY:
 7       Q      First two questions, name and home address.
 8       A      Jeffrey Cackowski, 68315 Eoin Way, that's E-o-i-n, Way,
 9              Washington, Michigan 48095.
10       Q      And are you employed by Central Transport International?
11       A      Yes.
12       Q      In what capacity?
13       A      Director of Quality Improvement and Claim Resolution.
14       Q      Okay.  What's the business of Central Transport
15              International?
16       A      LTL transportation.
17       Q      Okay.  Do they have a related company, Central
18              Transport, Inc.?
19       A      Yes.  I'm not sure of the relation on the name.
20       Q      Okay.  Is there a different -- is Central Transport,
21              Inc. a trucking company?
22       A      I'm -- if you're going to get into distinctions of
23              names, I do not know the distinctions.
24       Q      Is there a trucking company named Central Transport,
25              Inc., if you know?
```

```
 1   A    That would have to be from some --
 2   Q    Okay.  Let's leave a space in the transcript, and please
 3        fill in, was he -- did he resign?  Was he let go?  Was
 4        her terminated, the specific reason.
 5   A    Okay.
 6        _____
 7   Q    Okay?
 8   A    Yes.
 9   Q    Let's just jump ahead a little bit.
10             Well, okay.  I'm sorry.  Did Mr. Nasso ever
11        respond to your $50,000.00 settlement offer?
12   A    I don't believe he did.  I believe Home Assurance jumped
13        in then, or A I Marine, I mean.
14   Q    Well, A I Marine is Mr. Nasso, I'm sorry.
15   A    Oh, okay.
16   Q    Yeah, okay.
17   A    A I Marine is Mr. -- yeah.
18   Q    Right.
19   A    I don't know how the --
20   Q    Okay.
21   A    There was apparent rejection because it wasn't
22        fulfilled, so.
23   Q    Did there come a time when CTI was contacted by the law
24        firm of McDermott and Radzik?
25   A    Yes.
```

| | | |
|---|---|---|
| 1 | Q | Okay. And did you receive a letter from them? |
| 2 | A | Yes. |
| 3 | Q | Okay. And what, if anything, did you do in response to |
| 4 | | that correspondence? |
| 5 | A | I believe at that time, I had turned it over to Dave |
| 6 | | Rigelhof. |
| 7 | Q | Okay. And what was Mr. Rigelhof's position? |
| 8 | A | Claims Analyst. |
| 9 | Q | Okay. And how long had he been with the company? |
| 10 | A | With the company, probably, I would -- my guess would be |
| 11 | | five years. |
| 12 | Q | In the Claims Department? |
| 13 | A | In the Claims Department, probably, maybe 18 months, and |
| 14 | | claims related department for maybe three and a half |
| 15 | | years. |
| 16 | Q | Okay. |
| 17 | | I'd like you to look at -- I'd refer you to |
| 18 | | Plaintiff's 1. Look at Central's No. 167. |
| 19 | | I'd appreciate if you'd keep them in order, |
| 20 | | because then our questions are done. |
| 21 | A | Okay. Well, I'm just going to -- I'll keep them in |
| 22 | | order -- |
| 23 | Q | Sure. Absolutely. |
| 24 | A | -- this way. You want to do it that way? |
| 25 | Q | Because once they get out of order, -- |

```
 1   Q    What's the difference between the voucher request and
 2        your document 224?
 3   A    I'm sorry, 224?
 4   Q    Yes, 224.
 5   A    This is a claim screen entry. This is a -- this is a
 6        screen in the computer that we update in regards to
 7        claim status. Once we place the status of paid and
 8        check issued, if that paid and check issued amount is
 9        under $1,200.00, it issues a check. If it's over
10        $1,200.00, it prints a voucher.
11   Q    Okay. Did you ever have any discussions or
12        correspondence directly with Mr. McDermott?
13   A    Not to my knowledge.
14   Q    To your recollection, you directed Mr. Rigelhof to deal
15        with him?
16   A    Yes.
17   Q    Prior to today, have you seen a letter from Mr.
18        McDermott confirming the settlement of $80,000.00, dated
19        July 31?
20   A    What -- I'd have to look at the document. I want to say
21        it's, like, 216. We referred to it earlier. I wasn't
22        sure when and if I saw it.
23   Q    Okay. Did Mr. Rigelhof ever mention it to you?
24   A    Yes.
25   Q    When was that?
```

| | | |
|---|---|---|
| 1 | A | After the -- probably sometime around that 8/1 time when |
| 2 | | he inputted it into the computer. |
| 3 | Q | Okay. So, you're saying the day after this letter? |
| 4 | A | More than likely, yes. |
| 5 | Q | Okay. And did you give him any instructions with regard |
| 6 | | to this letter? |
| 7 | A | He -- he would have gone through the process that he did |
| 8 | | in regards to the claim screen and the voucher and then |
| 9 | | requested additional approval. |
| 10 | Q | Well, this July 31 letter says, |
| 11 | | "This will confirm our telephone conference of this |
| 12 | | date in which we agreed to settle the above |
| 13 | | referenced claim in the sum of $80,000.00." |
| 14 | A | Okay. |
| 15 | Q | Okay. When you discussed this with Mr. Rigelhof on or |
| 16 | | about August 1, did you ever instruct him to advise Mr. |
| 17 | | McDermott that the case was not settled? |
| 18 | A | No, I didn't. |
| 19 | Q | Can I ask why not? |
| 20 | A | It was -- it really was a settlement made between them |
| 21 | | two, between those two parties. |
| 22 | Q | Meaning, Mr. McDermott and Mr. Rigelhof? |
| 23 | A | Dave -- Dave was -- Dave was aware and would have |
| 24 | | informed Mr. McDermott at the time that this settlement |
| 25 | | would have to go through approvals. |

|    |   | |
|----|---|-|
| 1  |   | business? |
| 2  | A | It would be a procedure that we would hope to do. It's |
| 3  |   | an internal procedure that, you know, it's not affecting |
| 4  |   | the outflow of money, it's just affecting our internal |
| 5  |   | record keeping. |
| 6  | Q | Well, it just seems that you keep very good records on |
| 7  |   | everything, and there's nothing in writing that this |
| 8  |   | claim was ever denied. |
| 9  | A | I'm unaware -- not aware there wasn't anything in |
| 10 |   | writing. |
| 11 | Q | Do you have anything in writing to indicate that the |
| 12 |   | $80,000.00 settlement was never approved? |
| 13 | A | I -- if it hasn't been provided here, I'm not certain. |
| 14 |   | I mean, I'm under the assumption that somebody indicated |
| 15 |   | that we didn't approve it, or we wouldn't be here today. |
| 16 | Q | That's what I thought, too. |
| 17 |   | MR. RUDDY: I call for the production of |
| 18 |   | anything in writing showing that the claim was denied. |
| 19 |   | BY MR. RUDDY: |
| 20 | Q | Do you know if you ever advised the office of McDermott |
| 21 |   | & Radzik that the claim was not approved? |
| 22 | A | I didn't. |
| 23 | Q | Okay. Who should have, if anyone, from your |
| 24 |   | organization? |
| 25 | A | Dave, at the time, was doing the handling of the claim. |

```
 1    A    No.
 2    Q    -- that was?
 3    A    No, I don't.
 4    Q    Okay.  When you are handling a claim, do you actually
 5         maintain a hard copy, or are all your notations put in
 6         the computer?
 7    A    They're all imaged.
 8    Q    Okay.  So, generally, you don't have a hard copy of the
 9         file?
10    A    Correct.
11    Q    At any given time, estimate how many cargo claims are
12         pending with Central Transport, rough estimate?
13    A    A hundred.
14    Q    And how do you decide on who's going to handle which
15         claims?
16    A    They're -- they're decided either by customer, by
17         amount, or by region of the country that they're filed
18         out of.
19    Q    Okay.  Under those criteria, how come you got it
20         originally?
21    A    Because of the amount.
22    Q    Okay.  Under those criteria, how come Rigelhof got it
23         eventually?
24    A    Because I had a lot of things going on, different
25         directions I was going in, and I chose Dave to handle
```

```
 1              it.
 2     Q    At the time, was he your most experienced claims guy?
 3     A    Not necessarily, no.
 4     Q    Does your company have a claims manual?
 5     A    No.
 6     Q    So when you bring in claims people, how do you train
 7          them?
 8     A    By the day-to-day operations.  They'll normally have
 9          some internal experience in regards to the workings of
10          the company and/or the workings of OS&D.  So, the
11          training of review of documents and so forth, it would
12          kind of be a one-on-one based on how much knowledge that
13          person has and what they need.
14          MR. RUDDY:  I think I'm finished, but I am
15          going to reserve my right to recall you tomorrow as the
16          upper management representative, if anything surfaces in
17          Mr. Rigelhof's deposition, which is unexpected.
18          Okay?  Fair enough?
19          MR. HOWARD:  Fair enough.
20          THE WITNESS:  Okay.
21          MR. RUDDY:  I thank you much for coming.
22          THE WITNESS:  Okay.  Thank you.
23          MR. HOWARD:  I have no questions.
24          (Proceedings concluded at or about 4:10 a.m.)
                              - - -
```

CERTIFICATE OF COURT REPORTER

STATE OF MICHIGAN )
                  ) ss.
COUNTY OF OAKLAND )

     I certify that this transcript, consisting of 106 pages, is a complete, true, and correct record of the testimony of JEFFREY CACKOWSKI, held in this case on Thursday, June 5, 2008.

     I also certify that prior to taking this deposition, JEFFREY CACKOWSKI was duly sworn to tell the truth.

     I also certify that I am not a relative or employee of or an attorney for a party; or a relative or employee of an attorney for a party; or financially interested in the action.

                                            PENNY E. SIDICK (CER-4039)
                                            Tappert Court Reporting Service, Inc.
                                            26600 Schoenherr
                                            Warren, Michigan 48089
                                            Telephone: (586) 447-3800

Dated: June 16, 2008.